# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES JONES, | Case No. 1:04-CV-05742-LJO-WMW |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE DENIED (Doc. 85) |
| A.K. SCRIBNER, | |
| Defendants. | |

**I.   RELEVANT PROCEDURAL HISTORY**

Plaintiff Charles Jones ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's original complaint in this action was filed May 20, 2004 in the United States District Court for the Eastern District of California. This action proceeds on Plaintiff's amended complaint filed on April 25, 2005. On July 7, 2008, defendants filed a motion for summary judgment. (Doc. 85). Plaintiff filed an opposition on August 1, 2008, and defendants filed a reply on August 11, 2008. (Docs. 86, 89, 90).

///

///

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a Summary Judgment Motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that

the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the Motion for Summary Judgment, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)(per curiam). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

**III.    UNDISPUTED FACTS**[1]

1.  At all relevant times, Plaintiff was an inmate in the custody of the California Department of Corrections and Rehabilitation and incarcerated at the California State Prison in Corcoran, California ("Corcoran").

---

[1] The following facts are undisputed for the purpose of this Motion.

2.    Defendants were employed by the California Department of Corrections and Rehabilitation and worked at Corcoran: A. K. Scribner as Warden, Corcoran State Prison; D. D. Sheppard-Brooks as Associate Warden, Business Service; Chris Terle as Correctional Business Manager, II; R. J. Gonzales as Superintendent II-Prison Industrial Authority; E. Valdez as Prison Industrial Manager, Corcoran State Prison; and J. Mendoza as Prison Industrial Authority Safety Coordinator.

3.    Plaintiff filed a complaint on May 20, 2004 alleging that defendants violated his rights under the Eighth Amendment, and filed an amended complaint on April 25, 2005 naming the same defendants.

4.    In his complaint, Plaintiff alleges that there were leaks in the roof in the mess hall and work area of Corcoran that caused pigeon fecal matter to leak into both rooms.

5.    In his complaint, Plaintiff further alleges that as a result of the leaks, he was exposed to noxious smells and toxic mold.

## IV. ANALYSIS

### A. Plaintiff's Eighth Amendment Claim

In his complaint, Plaintiff alleges that he was exposed to toxic mold and pigeon feces and as a result he suffered respiratory problems. Plaintiff further alleges that his sickness was caused by unsanitary conditions at Corcoran and that defendants were aware of the unsafe conditions but failed to correct the problem thus violating Plaintiff's rights under the Eighth Amendment.

The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity and decency.'" Estelle v. Gamble, 429 U.S. 97, 102 (1976) (quoting Jackson v. Bishop, 404 F.2d 571, 579 (8th Cir. 1968)). A prison official violates the Eighth Amendment only when two requirements are met: (1) the objective requirement that the deprivation is "sufficiently serious", Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991), and (2) the subjective requirement that the prison official has a "sufficiently culpable state of mind", Id. (quoting Wilson, 501 U.S. at 298). The objective requirement that the deprivation be "sufficiently serious" is met where the prison official's act or omission results in the denial of

4

1  "the minimal civilized measure of life's necessities". Id. (quoting Rhodes v. Chapman, 452 U.S.
2  337, 347 (1981)).  The subjective requirement that the prison official has a "sufficiently culpable
3  state of mind" is met where the prison official acts with "deliberate indifference" to inmate health
4  or safety. Id. (quoting Wilson, 501 U.S. at 302-303).  A prison official acts with deliberate
5  indifference when he/she "knows of and disregards an excessive risk to inmate health or safety".
6  Id. at 837.  "[T]he official must both be aware of facts from which the inference could be drawn
7  that a substantial risk of serious harm exists, and he must also draw the inference." Id.

8        "It is undisputed that the treatment a prisoner receives in prison and the conditions under
9  which [the prisoner] is confined are subject to scrutiny under the Eighth Amendment." Helling
10 v. McKinney, 509 U.S. 25, 31 (1993).  Prisoner officials must provide prisoners with "food,
11 clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d
12 1080, 1107 (9th Cir. 1986).

13       Defendants argue that they are entitled to summary judgment as a matter of law because
14 (1) Plaintiff lacks admissible evidence to support his claim that defendants were deliberately
15 indifferent; (2) Plaintiff has not alleged facts to show that defendants proximately caused the
16 deprivation of his Eighth Amendment rights; and (3) Plaintiff's action is time-barred by the
17 relevant statute of limitations.

18     **B.**    **Plaintiff's Evidence Regarding Defendants' Deliberate Indifference**

19       Defendants argue that they are entitled to summary judgment as a matter of law because
20 Plaintiff failed to follow various procedural rules and thus lacks evidence in admissible form to
21 support one of the essential elements of his cause of action.  In order to support his Eighth
22 Amendment claim, Plaintiff must establish that defendants were "aware of the facts from which
23 the inference could be drawn that a substantial risk of harm exist[ed]" because of the unsanitary
24 conditions at Corcoran, and that defendants actually did "draw the inference". Farmer, 511 U.S.
25 at 837.

26       Defendants argue that Plaintiff's evidence to support this element should be stricken
27 because (1) Plaintiff's statements in his complaint and opposition to summary judgment are
28 based on hearsay and not personal knowledge; and (2) the exhibits he attached to his opposition

were not properly authenticated. Defendants contend Plaintiff has no other evidence other than the inadmissible evidence to support the necessary element that defendants acted with deliberate indifference, thereby entitling defendants to summary judgment. Defendants also argue that Plaintiff's opposition is procedurally improper because it fails to comply with local rules requiring an opposition to "reproduce the moving party's itemized statement of undisputed facts and admit or deny those facts, including a citation to the particular portion of any document rlied upon in support of any denial". (Def.'s Reply to Pl.'s Opp. to Motion for Summ. J. 4.)

The Court finds it unnecessary to address defendants' objections because it finds that the evidence provided in their own motion for summary judgment is enough to create a factual dispute as to whether defendants knew about the unsanitary conditions at Corcoran.

Defendants' evidence in support for their motion for summary judgment includes the deposition of Plaintiff. Plaintiff states in his deposition that Defendant R. Gonzales knew of the conditions in the mess hall because Plaintiff personally told him about it:

> Q.   You never talked to any of these individuals, though; correct?
> A.   I talked to Gonzales. I talked to – I don't know the other people's names I talked to. We had a meeting. They had a meeting – a couple of them had a meeting with me in the PIA building, but I don't know their names.
> . . .
> Q.   And what did you discuss with Mr. Gonzales?
> A.   About the smell in the office and the smell in the building. He told me that – I went in the office one day to get some – I think some paperwork or something and he told me – I said "It sure was nice and cool in here."
> He said, "I don't know why you say it's nice and cool in here. You complained about the smell of the stuff in there," something in that category.

(Jones Dep. 80:4-25, April 7, 2008.) Plaintiff's statements regarding Defendant Gonzales' knowledge of the conditions of the mess hall were based on Plaintiff's personal knowledge and were not hearsay. Therefore, they may be considered to oppose defendants' motion for summary judgment.

Plaintiff's statements at his deposition also support the inference that all the defendants had knowledge of the risk to Plaintiff's health because the risk was obvious. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that

1 the risk was obvious." Farmer, 511 U.S. at 842. Thus, evidence that the safety risk from the

2 unsanitary conditions of the mess hall was obvious would support the inference that defendants

3 had knowledge of the risk. Plaintiff provides statements during his deposition suggesting that the

4 unsanitary conditions of the mess hall were obvious and longstanding – "it was real bad":

> Q. Here's my question Mr. Jones: You say that a work order was submitted and then you say nothing done. How do you know nothing was done?
> A. Because we kept going in the – eating in the dining hall and it was still the same way. The roof was still (sic) holes in it. It was still stained. It was still bird dookey, I mean, stuff on the floor, and the tables still had stains on it.
> Q. Now, when you say nothing was done, though, did you personally watch when people came out to effect any work on the facility?
> A. I went in there and ate every day.
> Q. Okay. Is it possible that there was work done on the exterior portion of the building that you didnt' see?
> A. No. I would look. There was a big hole up there. You could see it as soon as you walk in. It was still there.
> Q. Okay. But people could have come out at times when you weren't there; correct?
> A. But the hole was still there. It was a big old hole right there and it wasn't fixed and you could see the roof. It was just laying there. It was mold. And it was a big hole there. It wasn't fixed. And all the leakage you could look up there, you could tell it was like mold coming down like real dry rot. It was all the way around. It wasn't fixed.
> Q. Okay. Now, this is in the dining hall?
> A. Dining hall, yes.
>     That's why I asked them to give me pictures, but they said they didn't take no pictures. But somebody told me they did take pictures and it was shown there was rot and a big old hole was still there. I mean, it was real bad.

(Jones Dep. 83:2-81:9.) Plaintiff further provides statements suggesting that the conditions were

obvious because the smell was so bad "a blind man could see it":

> Q. Okay. And you believe that the alleged problem was clear to Cal/OSHA based upon your review of documents or based upon your independent knowledge?
> A. My knowledge that it was like that.
> Q. The fact that it smelled bad?
> A. Smelled and it was – a blind man could see it. All the rot and smell and –

(Jones Dep. 90:19-25.) Plaintiff also provides statements during his deposition indicating that at

some point the conditions were so bad the entire mess hall was shut down:

> Q. Okay. Proceeding along, you said "The unsafe conditions in the dining hall was so bad, Cal/OSHA closed it down and put yellow tape around the whole place."
> A. Correct.
> Q. Do you have an independent recollection of that?
> A. I remember seeing – I was there. I saw the yellow tape being put around the building.

(Jones Dep. 88:7-13.)

///

1    Again, Plaintiff's statements regarding how bad the conditions were at Corcoran were
2    based on personal knowledge and were not hearsay.  Thus, they may be considered to oppose
3    defendants' motion for summary judgment.  The evidence suggests that the conditions at
4    Corcoran were so obviously unsanitary that a factfinder could draw the inference that defendants
5    were aware of the danger to Plaintiff's health.  Accordingly, defendants should not be entitled to
6    summary judgment as a matter of law on Plaintiff's Eighth Amendment claim against them.

### C. Plaintiff's Allegations Regarding Causation

8    Defendants contend that they are entitled to summary judgment as a matter of law
9    because Plaintiff's allegations are insufficient to establish liability for an Eighth Amendment
10   violation.  Defendants argue that Plaintiff neither alleges that defendants directly caused the
11   unsanitary conditions at Corcoran, nor does Plaintiff allege that the unsanitary conditions were
12   caused by defendants' failure to train or supervise personnel.  However, those are not the only
13   means of establishing legal causation for Eighth Amendment violations.  "A person deprives
14   another of a constitutional right," within the meaning of § 1983, "where that person 'does an
15   affirmative act, participates in another's affirmative acts, or omits to perform an act which [that
16   person] is legally required to do that causes the deprivation of which complaint is made.'"
17   Hydrick v. Hunter, 500 F.3d 978, 988 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740,
18   743 (9th Cir. 1978)) (emphasis added).  Prison officials are legally required to provide prisoners
19   with "'adequate food, clothing, shelter, sanitation, medical care, and personal safety.'" Hoptowit
20   v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982) (quoting Wright v. Rushen, 642 F.2d 1129, 1132-33
21   (9th Cir. 1981)) (emphasis added).  Further, "[a] supervisor is . . . liable for the constitutional
22   violations of . . . subordinates if the supervisor . . . knew of the violations and failed to act to
23   prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

24   Plaintiff alleges that defendants violated his Eighth Amendment rights because they were
25   deliberately indifferent and failed to provide him with adequate shelter and sanitation.  As
26   previously discussed, there is admissible evidence that shows that there were leaks in the roof at
27   the prison that caused Plaintiff to be exposed to pigeon feces and mold.  See supra Part IV.B.  It
28   is Plaintiff's contention that defendants owed him a duty to maintain a prison that was free from

unsanitary exposure to pigeon feces and mold and that defendants failed to do so. Plaintiff sufficiently alleges that defendants legally caused an Eighth Amendment violation. Therefore, defendants should not be entitled to summary judgment as a matter of law.

### D. Statute of Limitations

Defendants move for summary judgment as a matter of law on the ground that Plaintiff's action is time-barred due to application of the statute of limitations. In order to determine whether Plaintiff's claim is barred by the statute of limitations, the Court must determine: (1) what the applicable statute of limitations is; and (2) when Plaintiff's claim accrued for purposes of the statute of limitations.

#### 1. Applicable Statute of Limitation

The first issue is determining how long the relevant statute of limitations is for Plaintiff's lawsuit. Section 1983 contains no specific statute of limitations, thus federal courts apply the forum state's statute of limitations for personal injury actions. Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004); Maldonado v. Harris, 370 F.3d 945, 954-55 (9th Cir. 2004). California's statute of limitations for personal injury actions is one year for actions that accrued prior to January 1, 2003 and two years for actions that accrued after January 1, 2003. Jones, 393 F.3d at 927; Maldonado, 370 F.3d at 954-55.

#### 2. Accrual Date for Plaintiff's Claim

The second issue in assessing whether Plaintiff's claim is time-barred is determining when Plaintiff's claim accrued. "Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." Maldonado, 370 F.3d at 955 (9th Cir. 2004). Defendants argue that Plaintiff's claim accrued no later than October 2000 because that is the first time Plaintiff became sick from the exposure to pigeon feces and mold.

Defendants' application of the law is flawed. "In a suit . . . asserting an 'injury' of deliberate indifference, the claim therefore accrues when the prisoner 'knew or had reason to know of the [prison] employees' deliberate indifference". Actkinson v. Vargo, 284 Fed. Appx. 469 (9th Cir. 2008) (citing TwoRivers v. Lewis, 174 F.3d 987, 992 (9th Cir. 1999)). Defendants suggest the accrual date should be in October 2000 because that appears to be the earliest

incident of Plaintiff's adverse symptoms from exposure to the pigeon feces and mold. Reliance on that date is misplaced because that is not date Plaintiff "knew or had reason to know" of defendants' <u>deliberate indifference</u>, it is merely the date when Plaintiff "knew or had reason to know" that he was sick.

Further, the continuing violation exception to the general rule of accrual can be applied here to save Plaintiff's claims from application of the statute of limitations. The continuing violation doctrine involves "'repeated instances or continuing acts of the same nature, as for instance, repeated acts of sexual harassment or repeated discriminatory employment practices.'" <u>Nesovic v. United States</u>, 71 F.3d 776, 778 (1995) (quoting <u>Sisseton-Wahpeton Sioux Tribe v. United States</u>, 895 F.2d 592, 597 (9th Cir.), <u>cert. denied</u>, 498 U.S. 824, 111 S.Ct. 75 (1990)). "The effect of a continuing violation is to restart the statute of limitations." <u>Airweld, Inc. v. Airco, Inc.</u>, 742 F.2d 1184, 1190 (9th Cir. 1984). Here, Plaintiff alleges that defendants violated the Eighth Amendment by failing to repair leaks in the roof and exposing Plaintiff to pigeon feces and mold. The alleged violation continued well past October 2000 by defendants' continued failure to remedy the condition. Plaintiff states in his complaint[2] that the mess hall was closed on March 27, 2003 due to the unsanitary conditions. Thus, there is evidence that suggests that the statute of limitations was last restarted no earlier than March 27, 2003. The relevant statute of limitations would have been two years, giving Plaintiff a deadline of March 27, 2005 – without even taking into account whether the statute of limitations on Plaintiff's claims should be equitably tolled due to his incarceration or while he was required to exhaust his administrative remedies. Accordingly, the Court finds that defendants should not be entitled to summary judgment due to the application of the statute of limitations.

///

///

---

[2] Plaintiff may rely on his verified complaint in order to oppose defendants' motion for summary judgment. A verified pleading constitutes an opposing affidavit for purposes of summary judgment rule. <u>Jones v. Blanas</u>, 393 F.3d 918, 923 (9th Cir. 2004). Plaintiff's complaint may be considered in opposition to summary judgment where it is based on personal knowledge and sets forth specific facts admissible in evidence. <u>McElyea v. Babbitt</u>, 833 F.2d 196, 197 (9th Cir. 1987).

## V. CONCLUSION AND RECOMMENDATION

The Court further ORDERS that these Findings and Recommendations be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within THIRTY (30) days after being served with a copy of these Findings and Recommendations, any party may file written Objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the Objections shall be served and filed within TEN (10) court days (plus three days if served by mail) after service of the Objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file Objections within the specified time may waive the right to appeal the Order of the District Court. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   January 30, 2009**             /s/  **William M. Wunderlich**
                                          UNITED STATES MAGISTRATE JUDGE